UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILFORD W. STARGEL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE NUTRASWEET COMPANY and ) <br> NUTRASWEET HOLDINGS, INC., ) <br> ) <br> Defendants. ) <br> ) <br> ) | Case No. 13-cv-7575 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff Wilford Stargel has filed a three-count Complaint alleging breach of contract. Defendants The NutraSweet Company ("Company") and NutraSweet Holdings, Inc. ("Holdings") have moved to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim for breach. For the reasons provided below, Defendants' Motion to Dismiss [8] is granted in part and denied in part.

### BACKGROUND

Stargel was a long-term employee of Company and was responsible for bringing the product known as NutraSweet through the regulatory approval process. (Compl. ¶ 1)[1] In September 2003, Stargel separated from Company and entered into a Release and Separation Agreement ("Agreement"). (Compl. ¶¶ 2-3.)[2]

---

[1] All citations to paragraph numbers from the Complaint refer to paragraphs 1 through 23, beginning on page 2 of the Complaint.

[2] The Release and Separation Agreement does not contain Stargel's name and refers only to "Executive." Defendants acknowledge that "Executive" is Stargel. *See* (Def. Mot. at 1, n. 1.)

Pursuant to the Agreement, Company agreed to pay Stargel:

    A) One year's separation pay;

    B) A lump sum of $117,000.00 to satisfy all claims to incentive or bonus pay;

    C) $3,000 for unused vacation;

    D) Reimbursement of all Company-paid portions of dental coverage;

    E) Distribution of Stargel's 401(k) plan;

    F) $100.00 per share for each of the 4,000 shares of Holdings stock that Company would "cause [Holdings] to purchase" from Stargel, totaling $400,000.00, by issuance of two promissory notes to Stargel.

(Compl. Ex. A.) The first note ("Note A") required Holdings to pay Stargel $200,000.00 over two years in four installments of $50,000.00 each, plus quarterly interest payments on any unpaid principal. (*Id*. at 8.) The second note ("Note B") required Holdings to pay Stargel the remaining $200,000.00 on September 30, 2013. (*Id*. at 11.) Note B contains the following provision:

> <u>Default; Remedy</u>. Upon the occurrence of an Event of Default (as hereinafter defined), the Holder may b[y] written notice to the Payor declare[] this note to be in default, whereupon the unpaid balance of the principal of this Note and all accrued interest thereon shall immediately become due and payable . . . .
>
> . . . .
>
> For the purpose of this Note, an Event of Default shall consist of one or more of the following:
>
> (a) The Payor shall fail to make any payment of principal or interest payable hereunder, and such non-payment of principal or interest shall continue for five (5) Business Days after written notice of such nonpayment has been given to the Payor by the Holder.

(Compl. Ex. B.)

2

Company made quarterly interest payments to Stargel on the Note B principal[3] each year from 2005 through 2012. (Compl. ¶ 5, Exs. C, D.) These interest payments were paid by checks issued by Company. (*Id.* ¶ 6.)

Stargel received a letter, dated September 30, 2013, on Company letterhead from William DeFer, who serves as Company's President and Holdings' Vice President. (*Id.* ¶ 7.) DeFer wrote in part that "Holdings regrettably is unable to make the principal and interest payment due under the [Note B] on September 30, 2013 at this time." (*Id.* ¶ 7, Ex. E.) Stargel replied to DeFer in a letter, dated October 4, 2013, stating that Company was in default and Company did not cure the default within the five days prescribed by Note B. (*Id.* ¶ 8, Ex. F.)

## LEGAL STANDARD

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, the complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). When ruling on a motion to dismiss, the

---

[3] Although the 1099 forms and checks attached to the Complaint state only that they are for interest payments and not from which principal those interest payments derive, Stargel alleges only breach in relation to Note B, and the only interest payments scheduled between 2005 and 2012 would have been for the $200,000.00 principal associated with Note B.

court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in favor of the plaintiff. *Tamayo*, 526 F.3d at 1081.

## ANALYSIS

Under Illinois law, a plaintiff alleging breach of contract must show: "(i) the existence of a valid and enforceable contract, (ii) performance by the plaintiff, (iii) breach of the contract by the defendant, and (iv) resultant injury to the plaintiff." *Coghlan v. Beck*, 984 N.E.2d 132, 143 (Ill. App. Ct. 2013) (citation omitted). The parties do not dispute the existence of a valid contract or that Stargel has performed. Stargel's Complaint alleges: Count I – breach of contract against Company; Count II – breach of contract against Holdings; and Count III – alter ego.

*Count I – Breach of the Separation Agreement Against Company*

Stargel alleges that Company breached the Agreement by failing "to pay Stargel $200,000.00 in deferred compensation on or about September 30, 2013." (Compl. ¶ 10.) However, the Agreement clearly states that Company would purchase "2,000 shares of Holdings common stock held by [Stargel] at a purchase price of One Hundred Dollars ($100.00) per share payable by delivery of a subordinated promissory note in the form attached hereto as Exhibit B." (Compl. Ex. A(2)(h).) Defendants argue that when Company caused Holdings to issue Note B, Company fulfilled this portion of the separation agreement. (Def. Mot. at 4.)

Stargel's allegation contradicts the Agreement Stargel attached. Most noticeably, Stargel alleges the Agreement contained the September 30, 2013 due date, but this date is supplied by Note B. As Defendants argue, the very fact that Stargel attached Note B rebuts the claim that Company breached the Agreement. "[W]here a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the

4

document negates the claim." *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002). For this reason, Count I is dismissed.

*Count II – Breach of Note B Against Holdings*

Stargel next alleges that Holdings defaulted on Note B when Holdings failed to pay Stargel $200,000.00 by September 30, 2013. (Compl. ¶ 15.)[4] Here, the exhibits attached to the Complaint properly support Stargel's allegation. Note B states that Holdings "promises to pay to the order of Wayne Stargel . . . the sum of $200,000 in lawful money of the United State[s] of America on September 30, 2013, subject to earlier payment and the conditions as set forth herein." (Compl. Ex. B.) Further, the attached letter from DeFer states: "Holdings regrettably is unable to make the principal and interest payment due under the Subordinated Note on September 30, 2013 at this time." (Compl. Ex. E.)

Defendants argue that the subordinate nature of Note B precludes Holdings from paying the principal and interest due on September 30, 2013. This may be a fact question in the case, but a motion to dismiss is not the appropriate time to raise the issue. Indeed, neither case cited by Defendants to support this argument[5] concerned a motion to dismiss. Stargel has plausibly pled that Holdings has breached Note B by failing to pay the principal and interest by September 30, 2013, and therefore the motion to dismiss Count II is denied.

---

[4] Defendants argue that Count II must be dismissed because Stargel's wherefore clause seeks relief only from Company and not from Holdings. (Def. Mot. at 4-5.) Stargel claims that this was simply a typographical error and moves to amend. (Resp. at 10.) It is clear from the context of Count II that Stargel seeks relief against Holdings. Additionally, Defendants have briefed this issue in the alternative. Therefore, Stargel's motion to amend the wherefore clause to seek relief against Holdings is granted as "justice so requires." Fed. R. Civ. Pro. 15(a)(2).

[5] *Strosberg v. Brauvin Realty Servs., Inc.*, 691 N.E.2d 834 (Ill. App. Ct. 1998); *Culp v. Tri-County Tractor, Inc.*, 736 P.2d 1348 (Idaho Ct. App. 1987).

*Count III – Holdings is the Alter Ego of Company*

Finally, Stargel alleges that Holdings is the alter ego of Company and that the two should be held jointly and severally liable for breach of Note B. As a preliminary matter, Defendants argue that Count III must be dismissed because alter ego is not a standalone cause of action. Although this is true, "[o]ne who seeks to have the courts apply an exception to the rule of separate corporate existence, however, must seek that relief in his pleading . . . ." *South Side Bank v. T.S.B. Corp.*, 419 N.E.2d 477, 480 (Ill. App. Ct. 1981). Stargel alleges alter ego while simultaneously alleging that Company caused Holdings to issue Note B "to attempt to shield Company from its obligation to pay Stargel under the [Agreement] . . ." (Compl. ¶ 21.) Because Stargel alleges in Count III that Company breached its obligation under the Agreement, the alter-ego allegation does not stand alone here.

Beyond this threshold matter, Defendants argue that Stargel has not sufficiently pled the elements required of an alter-ego claim: "(1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) circumstances must be such that an adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751 (7th Cir. 2013). However, Stargel alleges that Holdings is undercapitalized, that Holdings and Company have intermingled funds, and that corporate formalities have not been maintained between Holdings and Company. (Compl. ¶ 20.) Defendants argue that Stargel's allegations are conclusory, yet Stargel has submitted documents purported to show Company had been paying Stargel's interest on Note B and the letter from DeFer as Holdings' Vice President issued on Company letterhead. The fraud or injustice alleged by Stargel is that Holdings is simply a shell of Company that assists Company in evading liabilities. For the purposes of surviving a motion

to dismiss, Stargel has adequately pled that Company breached its obligations in Note B as the alter-ego of Holdings.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss [8] is granted with respect to Count I and denied with respect to Counts II and III.

Date:   4/24/2014                                                      JOHN W. DARRAH
                                                                                     United States District Court Judge